## Case No. 14,505.

UNITED STATES v. BALES OF TOBACCO.

[See Case No. 15,965.]

---

## Case No. 14,506.

UNITED STATES v. BALLARD.

[13 Int. Rev. Rec. 195.]

District Court, E. D. Michigan. March Term, 1871.

CUSTOMS DUTIES — FRAUDULENT IMPORTATION — STATUTORY OFFENCES—INFORMATION—MOTION IN ARREST OF JUDGMENT.

1. In an indictment or information for a purely statutory offence the averment of the offence in the words of the statute creating it is, as a general rule, sufficient.

2. The tendency of modern legislation and judicial decisions is to discard unnecessary technicalities, and especially in misdemeanors created by statute.

3. The practical construction given to a law by the practice of the court and bar since the enactment of the law, and the form adopted for the enforcement of the penalties provided by that law, are not to be overturned but on the clearest proof that that construction is erroneous and the method of procedure defective.

4. Section 3 of the act of March 3, 1863 (12 Stat. 739), considered and construed.

5. Effect of and construction to be given to general words in statutes following particular, and the purpose of the general words "or otherwise," employed in section 3 of the act of March 3. 1863, declared.

6. The means employed to effect the commission of a statutory offence may or may not be set out in the information, at the option of the pleader.

7. The acts necessary to effect an entry being prescribed by statute, an allegation that an entry was effected is a specific statement of what acts were done, without a specific description of those acts.

8. The property charged in the information to have been entered being a horse, is required by law to be entered at actual cost or market value, and not "upon a classification thereof as to quality or value."

[Cited in U. S. v. Staton, Case No. 16,382.]

9. The allegations of the information as to the nature of the property and the place where and the time when the offence was committed are sufficient to apprise the defendant of what he is called upon to defend, and to plead in bar to a second prosecution for the same offence.

The offence is charged in the information in the following words: "One James Z. Ballard, late of Detroit aforesaid, did knowingly by means of a certain false representation effect an entry into the United States of certain merchandise, to wit, one brown horse, by payment of less than the amount of duty legally due thereon."

The defendant having been convicted, this motion is now made in arrest of judgment for the following reasons: (1) That it is not set forth in the information what the representation was, and that the same was false. (2) That the information does not set forth the facts and circumstances constituting the offence, and especially such statement of facts as, if true, would constitute effecting an entry. (3) "Because it is alleged in said information that the entry was made by payment of a less amount of duty than that legally due upon said horse, whereas the evidence showed that such entry, if coming within the statute within which such information was framed, constituted the offence of entering at a false classification as to value."

A. B. Maynard, U. S. Dist. Atty.

Alfred Russell, for defendant.

LONGYEAR, District Judge. The statute upon which this prosecution is based is section 3 of the act of March 3, 1863 (12 Stat. 739), and is in the following words: "If any person shall, by the exhibition of any false sample, or by means of any false representation or device, or by collusion with any officer of the revenue, or otherwise, knowingly effect or aid in effecting an entry of any goods, wares, or merchandise at less than the true weight or measure thereof, or upon a false classification thereof as to quality or value, or by the payment of less than the amount of duty legally due thereon, such person shall, upon conviction thereof, be fined in any sum not exceeding five thousand dollars, or be imprisoned not exceeding two years, or both, at the discretion of the court."

The offence here created is a misdemeanor. The general rule is, in indictments for misdemeanors created by statute, that it is sufficient to charge the crime in the words of the statute. There is not in such cases that technical nicety required as in cases of felony. U. S. v. Mills, 7 Pet. [32 U. S.] 142; U. S. v. Gooding, 12 Pet. [37 U. S.] 460, 474; U. S. v. Lancaster [Case No. 15,556]; Harrison v. State, 2 Cold. 232; Whart. Cr. Law, § 364; 1 Bish. Cr. Proc. § 359. Such being the gen-

eral rule, if the accused insists on greater particularity, it is for him to show that from the obvious intention of the legislature, or the known principles of law, the case falls within some exception to such general rule. State v. Jones, 33 Vt. 443, 445. Such greater particularity is always required where the offence was known to the common law and it is described in the statute by its common law name merely, but never where the statute is complete of itself, or where by creating it defines the offence. State v. Cook, 38 Vt. 437–439; State v. Ladd, 2 Swan, 228, 229.

With these general rules before us, we will now enter upon the inquiry as to what degree of particularity is required in an indictment or information charging the offence created by the statute above quoted. There has been of late years a growing disposition and inclination on the part of legislatures and courts, both state and federal, to discard all unnecessary technicalities in criminal as well as in civil pleadings. So that now, in all cases of purely statutory offences, where the courts do not consider themselves still bound by some inflexible technical rule such as that which has been applied by a long and uniform line of decisions in England and America to the description of the offence of obtaining money by false pretences, the inquiry is: (1) Is the offence charged the same as the offence created? (2) Is it so charged as to fairly apprise the accused of what he is called upon to defend? (3) Is it so charged that an acquittal or conviction can be pleaded in bar to a second prosecution?

In this connection I cannot forbear quoting the language of Judge Caruthers, in delivering the opinion of the court in the case of State v. Ladd, 2 Swan, 229, above cited. He says: "In times past the adherence to strict and unnecessary technicalities to rescue criminals has been a reproach to the administration of justice, and brought the law into contempt and encouraged crime. Shall we go any further, then, in shielding offenders, when they have, as in this case, upon a fair trial, been pronounced guilty by a jury, by opening another avenue to them for escape, upon what must be regarded as a technicality? We are unwilling to do so, without some positive rule of law constraining us." I adopt the language of Judge Caruthers, in all its parts, as fully applicable to the present case.

There is in this case still another consideration, of great force, which must not be overlooked, but which must be overridden in order to maintain the position of the learned counsel who supports this motion—a consideration which all must concede ought not to be overridden except in obedience to some positive imperative rule. That consideration grows out of the practical construction which has been given to the law in question, and to indictments and informations made under it, by the practice in this court under that law ever since its enactment.

The information in this case, in its description of the offence, is in the exact form adopted at the beginning and ever since used in this court. I should certainly hesitate long, and require the most indubitable proof that the form so adopted and used is clearly and fatally defective, before holding that it is so, and thereby condemn the scores and hundreds that have gone before it as worthless, as so much waste paper, and the numerous judgments based upon them as in fact unauthorized. When we add to this the further recognized fact that this form was adopted and the practice under it established under the administration and direct supervision of a prosecuting officer whose critical and well-defined, and usually correct, just, and liberal views, in regard to the meaning and proper construction of statutes, are well recognized and understood, and whose reputation as a good lawyer, a correct and painstaking pleader, and an able advocate has been well earned, the reasons for requiring the clearest proof that such construction is erroneous become all the more weighty. And when we still add to this the further fact of the acquiescence of the court and the entire bar during all that time, the reasons for sustaining such construction without such clear proof of error become almost irresistible. The weight of the above considerations is not lessened in the least by the fact that the learned counselor who was then the prosecuting officer of the government now makes this motion. What then is the offence created by the statute, and what is a sufficient description of it in the indictment or information?

In order to answer the first branch of this question intelligently, we are to inquire what was the good to be accomplished, and what the evil to be remedied; or in other words, what was the exigency intended to be met by the statute? By certain other acts of congress importers are required to pay a tax or duty to the United States upon goods, wares, and merchandise imported or brought into the United States by them. Upon some kinds the tax is thus levied by weight or measure, and to this end, by other provisions, the importer is required to effect an entry of such goods at not less than their true weight or measure. Upon other kinds of goods such tax is levied according to quality or value, upon a classification, in that regard, fixed by the act itself, and to this end the importer is required to effect an entry of such goods truly according to such classification. Upon other kinds such tax is levied according to actual cost if obtained by purchase, or market value at the place where obtained if obtained otherwise than by purchase, and to that end the importer is required to effect an entry of such goods at not less than actual cost or market value as the case may be, and by payment of the full amount of duty according thereto.

Now, the good to be accomplished by the law in question was the enforcement of the collection of the revenue, as provided by

these several acts; and the evil to be remedied was the violation of these provisions. Hence it is provided by the act in question, that if any person shall knowingly effect or aid in effecting an entry of any goods, wares, or merchandise in any one of these specified ways, viz. at less than the true weight or measure, upon a false classification as to quality or value, or by payment of less than the legal duty, each one of which involves a violation of some one of the acts before mentioned, he shall be punished as prescribed. The elements of which the offence thus created is composed are: (1) The effecting, or aiding in effecting, an entry in violation of the customs laws in some one or more of the particulars specified; and (2) that the party thus effecting or aiding in effecting such entry knew that it was so done in violation of law. And this is all there is of the offence.

It is contended, however, that there is still another element of the offence, growing out of the means by which it is committed, as specified in the section quoted, and that, therefore, such means should be specifically set out in the indictment or information, and that a general statement, in the language of the statute, that the act was done by the exhibition of a false sample, or (as in this case) by means of a false representation or device, or by collusion with an officer of the revenue, without setting out what the sample exhibited was, and wherein it was false, or what the representation or device was, and wherein it was false, or in what particular acts the collusion consisted, is not sufficient. This argument is founded upon the preliminary clauses of the section quoted, viz.: "If any person shall, by the exhibition of any false sample, or by means of any false representation or device, or by collusion with any officer of the revenue, or otherwise, knowingly effect," etc. But for the concluding clause, "or otherwise," the conclusion contended for, that the means adopted to commit the offence constitutes one of its elements, would seem to be inevitable. But the use of those words, in my opinion, defeats the conclusion. They render that unlimited and general which by the preceding clauses, without those words, would be limited and specific. That which is thus rendered unlimited and general relates to the means or manner by or in which the offence is committed, and the effect is to make the sense of the section as if it read as follows: "If any person shall knowingly effect or aid in effecting an entry of any goods, wares, or merchandise, at less than the true weight or measure thereof, or upon a false classification thereof as to quality or value, or by the payment of less than the amount of duty legally due thereon, whether by the exhibition of any false sample, by means of any false representation or de-

vice, by collusion with any officer of the revenue, or by any other means, or in any manner whatsoever, he shall on conviction be punished," etc. These specific clauses were probably inserted there to make it clear that although the exhibition of a false sample with fraudulent intent, a false representation or device with like intent, and collusion with an officer of the revenue with the same intent, may each constitute a crime in and of itself when unaccompanied by the consummation of the ultimate act intended to be done, yet that when those acts result in effecting a false entry, as specified that then such previous acts shall be considered as merged in the false entry, and that alone shall constitute the offence; and then the words "or otherwise" are inserted to show clearly that what precedes was not intended to limit or in any manner qualify the offence intended to be created and defined, viz., "knowingly effecting or aiding to effect an entry of goods, wares, and merchandise," in the manner specified. The facts answering to these preliminary clauses of the section, therefore, may or may not be alleged in the indictment or information, at the option of the pleader. It does not follow, however, that when alleged they may be treated as surplusage. But as that question is not involved, we will not digress to discuss it here.

I hold, therefore, that the information is not defective for the reason that it does not allege what the supposed pretence was, and that it was false. I think it might be shown, however, that even if the false pretence, etc., constitutes an element of the offence, the description of the offence in the words of the statute would, under the rules laid down in the commencement of this opinion, be good; that the rule which has obtained in regard to indictments for obtaining money, etc., by false pretences, upon which great reliance has been placed at the bar in support of the motion, is an exception to the general rule; and that even that exception has grown up in consequence of a long line of decisions begun in England, and followed in this country, based upon some peculiar ideas as to that particular offence, which decisions however might not be now made, in the more enlightened views of courts of the present day, if the question were a new one. See U. S. v. Gooding, 12 Wheat. [25 U. S.] 460, 474; Pet. Cond. R. 572, 583, 584; U. S. v. Armstrong, 5 Phila. 273, 277 [Case No. 14.468]; U. S. v. Batchelder [Case No. 14,490]. But in view of the conclusion already arrived at as to what constitutes the offence, an extended discussion of this branch of the question is unnecessary.

The second ground of motion is, in brief, that the information does not contain such statement of facts as, if true, would constitute effecting an entry.