STATE v. HERBERT GRACE.

Special Term at Brattleboro, February, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed March 18, 1913.

*Criminal Law—Evidence—Former Plea of Guilty—Correcting Record—Declarations—Cross-Examination—Motion in Arrest—Information—Sufficiency.*

In a prosecution for an offence under the blanket act, under a complaint charging that offence and concurrent adultery, to which complaint respondent had pleaded guilty at the preliminary hearing before a municipal court, and the State called the judge of that court as a witness, who produced what purported to be a copy of the record of the case against respondent in that court, but which was certified to be a copy of the record of a like case against the *particeps*, the witness was properly allowed to erase the name of the *particeps* from the certificate, to substitute therefor the name of respondent, and then to testify that the copy was according to the fact, and the corrected copy was then properly admitted in evidence against respondent.

The corrected copy was not inadmissible for that it showed that respondent also pleaded guilty in the municipal court to an offence for which he was not being tried in the county court, for that did not vitiate the plea as to the offence for which he was being tried.

The objection that designated testimony was not proper cross-examination will not be considered on review, where it does not appear what the testimony in chief was.

In a prosecution for an offence under the blanket act, where respondent claimed that his relations with the *particeps* had always been proper, and that there had never been any trouble between him and her husband nor any one else concerning those relations, it was material for the State to show that, the next morning after its evidence tended to show that people went to the house in which respondent and the *particeps* lived, and created a disturbance and assaulted respondent on account of his relations with the *particeps*, respondent said that he had been handled pretty roughly.

In a prosecution of an unmarried man for an offence under the blanket act with a married woman, where the State claimed that she had agreed with him to get a divorce from her husband, and she, when called as a witness for him, testified on cross-examination that she liked him; that they had always been on friendly terms; and that he had always treated her well, it was material for the State further to elicit from her that she calculated to see a lawyer, because she wanted a divorce, as that testimony tended to characterize her relations with respondent to which she had already testified, and afforded an inference of what she thought the result might be.

In a prosecution for an offence to which the State proved that respondent had pleaded guilty at the preliminary hearing, and respondent testified that the "officers" advised him to do so, one who had been an officer, and who had assisted the police officer in arresting respondent, was properly allowed to testify that he did not so advise respondent, for the witness came fairly within the term "officer" as used by respondent.

After conviction of an offence under the blanket act, a motion for judgment of not guilty, on the ground that the information fails to allege any illicit intention on the part of the *particeps*, was properly denied, where the information alleged an illicit intention by and between respondent and the *particeps* then and there to have unlawful sexual intercourse with each other.

INFORMATION charging adultery and an offence under the blanket act; but prosecution for only the latter offence. Plea, not guilty. Trial by jury at the April Term, 1912, Windham County, *Fish,* J., presiding. Verdict, guilty; and judgment thereon. The respondent excepted. The opinion states the case.

*E. W. Gibson* for the respondent.

*Frank E. Barber,* State's Attorney, for the State.

ROWELL, C. J. This is an information for adultery with one Wilma Quimby, a married woman, and for an offence with her under the blanket act, for which latter offence alone the prisoner was tried in the county court.

. . . The prisoner and the particeps were complained of for both offences before the municipal court of Bellows Falls, where the prisoner pleaded guilty "to said complaint," and was held for trial before the county court. To show that he pleaded guilty in the municipal court, the State called the judge of that court, who produced what purported to be a copy of the record in the case against the prisoner, but which was certified to be a copy of the record in the case against the particeps. Objection being made for immateriality, the witness was allowed to and did then and there erase the name of the particeps in the certificate and substitute therefor the name of the prisoner, and then testified that the copy was according to the fact, which we take to mean, according to the record. Thereupon the prisoner further objected to its admission because it had not been compared with the record since the change, and because the copy on its face purported to show that the prisoner pleaded guilty to an offence for which he was not being tried in the county court.

But neither of these objections are good, for taking the rule to be as stated in *Mott* v. *Reynolds,* 27 Vt. 206, on which the prisoner relies, namely, that such amendments should not be made on the recollection even of one authorized to make them, except in very obvious cases of omission or error,—this case is within that rule, for here the error *was* very obvious, as the entire body of the copy purported to be in the prisoner's case, and certifying it as in the particeps's case was clearly a misprision.

Nor was the copy inadmissible for the purpose for which it was offered because it showed that the prisoner pleaded guilty to an offence for which he was not being tried in the county court; for that did not vitiate the plea as to the offence for which he was being tried.

The prisoner claimed that his relations with the particeps had always been proper, and that there had never been any trouble between him and her husband nor any one else concerning those relations. On cross-examination of the prisoner's witness, Ryder, who saw the prisoner the next morning after the State's testimony tended to show that a party of people went to the house in Salisbury in which the witness and his wife, and the particeps and the prisoner, lived, and created a disturbance and assaulted the prisoner on account of his relations with the particeps,—the witness was asked if the prisoner had been han-

dled pretty roughly, and he said he had. This question was excepted to as not being proper cross-examination, and as being immaterial and irrelevant.

As to its not being proper cross-examination we cannot say, for it does not appear what the testimony in chief was. As to its calling for immaterial and irrelevant testimony, it does not appear that it did, but rather that it did not, for it tended to meet the prisoner's claim that there never had been any trouble between him and anyone concerning his relations with the particeps.

The State claimed that the particeps agreed with the prisoner to get a divorce from her husband, and asked her if she had not talked with the prisoner about going to see a lawyer, and she said that she calculated to see a lawyer, because she wanted a divorce. This was excepted to as immaterial. The witness had already testified on cross-examination that she liked the prisoner; that they had always been on friendly terms; and that he had always treated her well. This testimony was proper as tending to characterize the witness's relations with the prisoner to which she had already testified, and as affording an inference of what she thought the result might be, the prisoner being unmarried.

The prisoner testified that the officers advised him to plead guilty in the municipal court. The prisoner excepted to allowing Phelps to testify that he did not thus advise him, because Phelps was not an officer. But he had been, and assisted the police officer in arresting the prisoner. So here was no error, for Phelps came fairly within the term "officers" as used by the prisoner.

The information alleges an illicit intention by and between the prisoner and the particeps then and there to have unlawful sexual connection with each other. This is an answer to the motion for a judgment of not guilty because the information fails to allege an illicit intention of any kind on the part of the particeps.

*Judgment that there is no error and that the prisoner takes nothing by his exceptions.*